UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN H. RING, III, CHAPTER 7 TRUSTEE,

        Plaintiff-Appellant,

    v.

TED'S JUMBO RED HOTS, INC.,

        Defendant-Appellee.

**DECISION AND ORDER**

21-CV-955S

## I.  INTRODUCTION

In an adversary proceeding brought by Trustee John H. Ring, III ("Trustee" or "Ring"), the Bankruptcy Court (Hon. Michael A. Kaplan) granted summary judgment to Defendant Ted's Jumbo Red Hots, Inc. ("Ted's"). At stake in this appeal is $100,000 that Ring argues Ted's was obliged to pay debtor Theodore Liaros pursuant to a pre-bankruptcy contract. Because the Bankruptcy Court properly found that Ted's was not obliged to pay Liaros the $100,000, this Court affirms its decision.

## II.  BACKGROUND

Theodore Spiro Liaros was vice president and shareholder of Ted's Jumbo Red Hots, a hot dog business founded in 1927 by his grandfather, from approximately 1990 to 2010. (Appellant's Statement of Material Facts, Docket No. 6-1 at p. 49; Docket No. 8 at p. 17.) In 2010, Liaros's employment with Ted's was terminated and Liaros's sister, Thecly Ortolani, became the president of Ted's. (Docket No. 6-1 at p. 49.) In May 2011, Liaros opened a restaurant called Theodore's Original Charcoal-Broiled Red Hots, Inc. (Id.) The family conflict surrounding these events was the subject of an article in the July-August 2011 edition of the local magazine *Buffalo Spree*. (Docket No. 8 at pp. 51-62.)

1

On May 16, 2013, Liaros entered into a contract with Ted's to sell his Ted's shares to Ted's for $1.5 million. ("The Agreement," Docket No. 6-1 at pp. 13-25.) Sections 1-6 of the Agreement contained representations regarding the purchase of the stock, warranties, conditions for closing, and details of the closing. Section 7 of the Agreement contained restrictions on the parties' conduct. The parties were defined as including Ted's, Thecly Ortolani, and Liaros himself. (Id. at p. 16.) Pursuant to § 7, the parties were restricted from: opening stores within 2 miles of the other party's store; using the food or drink recipes of the other party; infringing on the other party's intellectual property; entering the store locations of the other party; and soliciting the employees of the other party. (Id. at pp. 16-17.) Section 7 also limited the parties' speech. Relevant to the instant action, the parties were not to "disparage, ridicule, or criticize the other party in any respect," or refer to the other in advertising, social media, or newspapers. (Id. at p. 16.) The Agreement specifically made the *Buffalo Spree* article an off-limits topic. (Id. at p. 17.) Liaros was also to discontinue references to the history of Ted's hot dog business and to his grandfather, the founder of Ted's. (Id. at p. 16.)

As "additional consideration for agreeing to the restrictions referred to in Section 7," Section 8 provided that Ted's would pay Liaros $200,000 in four equal installments at the end of December in 2014, 2015, 2016, and 2017. (Docket No 6-1 at pp. 17-18.) Section 8 also contained the following provision: "[t]he Corporation [Ted's] agrees that immaterial or inadvertent instances of non-compliance with the restrictions set forth in Section 7 that are not harmful to the Corporation's business shall not be grounds to withhold payment of all or any portion of such installments." (Id. at p. 18.)

Ted's made payments of $50,000 to Liaros at the end of 2014 and 2015. (Id. at p.

53.) In 2016, Liaros engaged in conduct covered by the Agreement. On April 24, 2016, on the Facebook page of Theodore's, Liaros discussed his tax woes, his ouster from Ted's by his father and sister, and stated, "[i]t is time to set the record straight. I am Ted, the grandson and namesake of the Founder of Ted's Hot Dogs." (Docket No. 8-1 at pp. 44-46.) Readers commented on or "liked" his comments. Readers made comments such as, "after reading your story years ago, we refuse to ever go into Ted's," "hear, hear, I have not and will not EVER eat at Ted's ever again," and "wow, someone in your family is a rotten apple." (Id. at pp. 48-50.) On April 28, 2016, Liaros again posted on Facebook, this time referring to the provisions of the Agreement, discussing his sister's and uncle's conduct, and providing a link to the *Buffalo Spree* article. (Docket No. 8 at p. 53.) On May 26, June 15, and June 20, 2016, Liaros again posted on Facebook, discussing family politics and referring to his grandfather, the founder of Ted's. (Id. at pp. 58-65.)

Attorneys for Ted's sent Liaros a cease-and-desist letter on June 20, 2016, indicating that he had breached parts of § 7 of the Agreement and demanding that he stop posting about topics covered by the Agreement and take down his Facebook posts. (Id. at pp. 64-65.) On the following day, June 21, 2016, Liaros again posted on Facebook, linking to an image of the cease-and-desist letter, discussing the unfairness of the Agreement, and referring to the conduct of his sister and her "minions." (Id. at p. 101.)

Ted's did not make the 2016 and 2017 payments to Liaros.

Liaros and his wife, Beth Ann Liaros, filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on October 6, 2016. (Id. at p. 47.) On December 1, 2017, Ring, the Bankruptcy Trustee, filed a motion pursuant to Section 365 (a) of the Code to assume the Agreement. (Id. at p. 48.) Ring commenced an adversary

3

proceeding against Ted's on March 8, 2019, seeking to recover the $100,000 he claimed was due under section 8 of the Agreement plus attorneys' fees and interest, pursuant to 11 U.S.C. § 542 (b). (Docket No. 6-1 at pp. 5-11.) Ring moved for summary judgment in the Adversary Proceeding on April 2, 2021. (See Docket No. 4-5 at pp. 1-6.) Ted's then filed a cross motion for summary judgment and for dismissal of Ring's complaint. (Docket No. 4-1 at p. 7.)

On August 6, 2021, the Bankruptcy Court rendered a decision from the bench denying Ring's motion to assume the Agreement, denying Ring's motion and granting Ted's cross-motion for summary judgment in the adversary proceeding, and dismissing Ring's complaint in the adversary proceeding. (Docket No. 6-1 at pp. 127-28.) Ring appeals the denial of his motion to assume the Agreement in a separate proceeding before this Court. (See 1:19-CV-957S.) In the instant appeal, Ring challenges the Bankruptcy Court's denial of his motion for summary judgment and dismissal of his complaint in the adversary proceeding. (Docket No. 6.)

## III.  DISCUSSION

Ring argues that the Bankruptcy Court erroneously held that Ted's was not obliged to pay the remaining $100,000 to Liaros under the Agreement. Ted's argues that Liaros's comments were not protected by § 8 and that it was therefore justified in withholding the remaining payments.

### A.  Legal Standards

#### 1.  Jurisdiction and Standard of Review

United States District Courts have jurisdiction to hear appeals from "final

judgments, orders, and decrees" of bankruptcy courts. 28 U.S.C. § 158 (a). A district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Heilbron v. Plaza, No. 20-CV-00312 (CBA), 2021 WL 1062034, at *2 (E.D.N.Y. Mar. 19, 2021) (quoting Sumpter v. DPH Holdings Corp. (In re DPH Holdings Corp.), 468 B.R. 603, 611 (S.D.N.Y. 2012) (quoting former Fed. R. Bankr. P. 8013)). See also W. Milford Shopping Plaza, LLC v. Great Atl. & Pac. Tea Co., Inc. (In re Great Atl. & Pac. Tea Co., Inc.), No. 14-cv-4170 (NSR), 2015 WL 6395967, at *2 n. 1 (S.D.N.Y. Oct. 21, 2015) (noting that, although the Federal Rules of Bankruptcy Procedure were amended to remove Rule 8013, the appellate powers of the District Court with respect to bankruptcy appeals have remained the same)).

The district court must accept a bankruptcy court's findings of fact unless they are clearly erroneous, but it reviews the bankruptcy court's legal conclusions *de novo*. Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006); see also In re Bell, 225 F.3d 203, 209 (2d Cir. 2000). "In reviewing the bankruptcy court's decision, a district court need not agree with every conclusion reached and 'may affirm that decision on any ground supported in the record.'" In re Bodine, 190 B.R. 759, 762 (S.D.N.Y. 1995) (quoting In re Coronet Cap. Co., No. 94 Civ. 1187 (LAP), 1995 WL 429494, at *2 (S.D.N.Y. July 20, 1995) (citing Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1359 (2d Cir. 1993), cert. denied, 510 U.S. 945, 114 S. Ct. 385, 126 L. Ed. 2d 333 (1993)).

Contract interpretation is generally a question of law. See Beth Medrash Eeyun Hatalmud v. Spellings, 505 F.3d 139, 145 (2d Cir. 2007). The meaning of an unambiguous contract is a legal conclusion, reviewed *de novo.* See id.

## 2. Summary Judgment

Ring here appeals Judge Kaplan's grant of summary judgment to Ted's. Federal Rule of Civil Procedure 56 is made applicable to adversary proceedings like this one by Bankruptcy Rule 7056. Fed. R. Bankr. P. 7056.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). The movant has the initial burden of showing that there is no genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It may satisfy this burden by relying on evidence in the record, "including depositions, documents, ... [and] affidavits," Fed. R. Civ. P. 56 (c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (citing Celotex, 477 U.S. at 322-23); see Fed. R. Civ. P. 56 (c)(1)(B). Once the movant has satisfied its initial burden, "the nonmoving party must come forward with specific facts" showing that there is a genuine dispute of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted). If the nonmovant fails to carry this burden, the court may grant summary judgment. See Celotex Corp., 477 U.S. at 323.

A material fact is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). But

6

"conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." <u>Kulak v. City of N.Y.</u>, 88 F.3d 63, 71 (2d Cir. 1996).

Although each party here moved for summary judgment, that does not change the standard: "cross-motions are no more than a claim by each side that it alone is entitled to summary judgment." <u>Wallach v. Smith</u>, No. 15-CV-1080(LJV), 2017 WL 2957829, at *3 (W.D.N.Y. July 11, 2017), <u>aff'd sub nom.</u> <u>In re NanoDynamics, Inc.</u>, 735 F. App'x 762 (2d Cir. 2018) (quoting <u>Clear Channel Outdoor, Inc. v. City of N.Y.</u>, 594 F.3d 94, 103 (2d Cir. 2010)).

### 3.  Property of the Estate

Under 11 U.S.C. § 541, the Trustee is authorized to collect and reduce to money the property of the Bankruptcy estate.  Property of the estate includes rights to payment under pre-petition contracts that are due post-petition. <u>In re Schneeweiss</u>, 233 B.R. 28, 31 (Bankr. N.D.N.Y. 1998)

### B.  Liaros does not have a right to payment under the Agreement.

In the adversary proceeding, Ring sought to enforce what he argues is Liaros's pre-petition right to payment under § 8 of the Agreement. In granting summary judgment to Ted's, Judge Kaplan found that Ted's had no obligation to make the remaining payments to Liaros because his public comments were not covered by the limited exception in § 8.

Ring argues vigorously that Liaros's Facebook posts are covered by the protection in § 8 of the Agreement. Section 8 states, "the Corporation agrees that immaterial or inadvertent instances of non-compliance with the restrictions set forth in Section 7 that are not harmful to the Corporation's business shall not be grounds to withhold payment

of all or any portion of such installments." (Docket No. 7 at p. 8.) Ring argues that, because Ted's has not shown that Liaros' comments harmed Ted's business, Ted's was not justified in withholding the last two $50,000 payments in 2016 and 2017. Ted's argues for a different reading of this provision: that, when Liaros made statements that were not inadvertent and not immaterial, he put himself outside the protection of § 8 and the question of harm to Ted's need not be reached. This is the reading that Judge Kaplan adopted, and it is correct.

First, Judge Kaplan found that Liaros's statements were neither immaterial—which he defined as meaning "of no substantial consequence"—nor unintentional. (Docket No. 8 at p. 155.)  Ring argues that the statements were not "material" because they did not constitute a material breach of the entire Agreement, the overriding purpose of which was to transfer Liaros's stock to Ted's. (Docket No. 9 at p. 4.) While this is an accurate legal definition of the "materiality" of a breach, and is discussed at greater length in the companion decision (see 1:21-CV-957), it does not represent the meaning of the adjective "immaterial" as used in § 8. "[W]here unambiguous, … contract language should be given its plain and ordinary meaning." Town of Wawarsing v. Camp, Dresser & McKee, Inc., 49 A.D.3d 1100, 1102, 855 N.Y.S.2d 691, 693 (App. Div. 2008) (citing State of N.Y. v. Robin Operating Corp., 3 A.D.3d 757, 758, 773 N.Y.S.2d 131 (2004). Webster's Third International Dictionary defines "immaterial" as meaning, among other things, "of no substantial consequence, unimportant." This Court sees no reason to adopt any other reading of the term "immaterial," and every reason to find that Liaros's reference to his grandfather and linking to the *Buffalo Spree* article, among other things, were not "of no substantial consequence," given the explicit requirements of §7.

8

This Court also agrees with Judge Kaplan's finding that Ted's was not required to show that the comments harmed it before Ted's could be released from its payment obligation. Under New York law, "[a]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." Process Am., Inc. v. Cynergy Holdings, LLC, 839 F.3d 125, 133 (2d Cir. 2016) (quoting LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp., 424 F.3d 195, 206 (2d Cir. 2005) (alterations and internal quotation marks omitted)). Ring argues that the phrase "that are not harmful" is a necessary element of §8, so that, if Ted's cannot show harm, the protection of § 8 remains, regardless of whether the comments were material or intentional. But this makes superfluous the terms "immaterial" and "inadvertent" at the beginning of § 8. Under Ring's reading, there is no reason to examine if the statements were immaterial or inadvertent, because the question of harm is the outcome-determinative question. Ring's reading ignores the requirement that comments be immaterial or inadvertent for Liaros to continue receiving payment.

This interpretation also better comports with standard English usage than Ring's interpretation. Ring argues that the Agreement contains two coequal requirements for a statement to breach § 7: (a) it must be immaterial or inadvertent and (b) it must harm Ted's. In other words, Ring argues that the word "that" is a "conjunction that imposes an additional condition on Ted's ability to withhold payments." (Docket No. 6 at p. 18). This Court disagrees. In the relevant sentence, the word "that" introduces what is known as an adjectival clause. An adjectival clause is "a *dependent* clause that is used to *expand* a noun or noun phrase." Bryan Garner, Garner's Modern American Usage 886 (Third Edition, 2009) (emphasis added). The phrase "that are not harmful" is a dependent

clause, not an equal subject of the sentence. Thus, the condition of not being harmful is not a co-equal condition to "immateriality" or "inadvertence." Rather, only if one of these first conditions exists need one consider the dependent phrase that "expands," or further describes, them. If such does not occur—if the comments are either material or intentional—then there is no need to read the sentence further. This reading comports with modern American usage and this Court finds no error in Judge Kaplan so interpreting the relevant sentence. When Judge Kaplan found that the statements were both material and intentional, the inquiry ended, and § 8's protection no longer applied.

This finding determines the outcome of Ring's appeal. Liaros's silence as to the topics specified in § 7 was a condition precedent to his receiving payment under § 8. Under New York law, the failure of a condition precedent relives the other party of its obligation to perform. JLM Couture, Inc. v. Gutman, No. 21-870, 2022 WL 211017, at *11 (2d Cir. Jan. 25, 2022) (holding that failure to fulfil condition precedent to payment— faithful performance—relieved other party of duty to pay) (citing Restatement (Second) of Contracts § 225(1) ("Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused.")).

As discussed above, this Court finds that Liaros's comments were not covered by the exception provided in § 8. Liaros's statements therefore relieved Ted's of its obligation to make the remaining two $50,000 payments. Ted's owes Liaros no payment, and there is no property of the estate under 11 U.S.C. § 541 for Ring to recover. The Bankruptcy Court's decision is therefore affirmed.

## IV.  CONCLUSION

For the foregoing reasons, this Court affirms the Order of the Bankruptcy Court

granting summary judgment to Ted's, denying summary judgment to Ring, and dismissing Ring's complaint.

## V.  ORDERS

IT HEREBY IS ORDERED, that the Order of the Bankruptcy Court, Western District of New York (1:19-ap-1004, Docket No. 71), is AFFIRMED.

FURTHER, that the Appeal (Docket No. 1) is DENIED and DISMISSED.

FURTHER, that the Clerk of Court is DIRECTED to close this case.

SO ORDERED.

Dated:          February 15, 2022
                Buffalo, New York

                                s/William M. Skretny
                                WILLIAM M. SKRETNY
                                United States District Judge